```
                 IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA

                                    )
JOSEPH G. LUCAS,                    )    Civil Action No. 05-1760
                                    )
          Plaintiff,                )
                                    )
                                    )    Judge David S. Cercone
                                    )
                                    )
          v.                        )    Magistrate Judge
                                    )    Francis X. Caiazza
                                    )
COUNTY OF ALLEGHENY,                )
                                    )
                                    )
          Defendant.                )
```

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Attorney Joseph G. Lucas ("Lucas" or "the Plaintiff") alleges that he suffered gender discrimination in violation of the Equal Protection Clause of the United States Constitution and 42 U.S.C § 1983, and was denied his right to a veteran's preference in violation of the Veteran's Preference Act, 51 Pa. Cons. Stat. §7101, when he was considered for but not hired to fill three positions in the Allegheny County Law Department("Law Department"). These jobs ultimately were offered to and filled by non-veteran women. The Defendant's Motion for Summary Judgment is pending. This court respectfully recommends that this Motion be granted in part and denied in part.

## II. REPORT

### A. FACTUAL BACKGROUND

During the period from January 13 through January 27, 2005, Allegheny County("Defendant" or "the County") posted an internet announcement advertising a job opening for an attorney in the Mental Health/Mental Retardation ("MH/MR") section of its Law Department. (Doc. 34-2 Ex. 4) The attorney hired would represent the County at hearings held in mental health facilities county-wide. (Doc. 34-2 Ex. 5 at 37). The minimum requirements for the position included a law degree from an accredited law school, and a license to practice law in Pennsylvania. The announcement also noted a preference for candidates with experience in municipal or health care law, and stated that a veteran's preference would be accorded to qualified applicants.

Lucas, who had both a law degree and a Pennsylvania license, submitted an application for this job, describing his past experience and his status as a veteran. In February 2005, he was granted an interview with Michael Wojcik ("Wojcik"), the County Solicitor, Paul Molter ("Molter"), the attorney heading the County's MH/MR group, and Laura Whiteman ("Whiteman"), the supervising attorney for the Law Department's Children Youth and Family ("CYF") group. Whiteman was present because two positions within her group would open in the spring. Id. at 40. Lucas was told that applicants interviewing for the MH/MR opening would, if

they were interested, be considered for all three opportunities. The interview for the MH/MR position would serve as the interview for the CYF positions as well. Id. at 41. Lucas indicated that he would like to be considered for the CYF openings.

About a month after this interview, Lucas telephone Wojcik for an update and was told that he was still under consideration for the MH/MR position. (Doc. 34-2 Ex. 1 at 16). Lucas did not hear from the Law Department about this job again. In mid-April 2005, he learned from a co-worker that Crystal Latimer ("Latimer"), who had interviewed for the County job the same day as Lucas, and had worked as a contract attorney with him at a Philadelphia firm, had been offered the MH/MR job. Id. at 18. This co-worker told Lucas that Latimer did not want him to know that she had been hired. Id. Lucas testified at his deposition that he called Latimer to congratulate her and asked why she did not want him to know about her job. Latimer explained that she had been asked - she did not say by whom - not to tell Lucas that she had been hired, because he was being considered for the CYF openings.

In May 2005, Lucas again visited the County's website and saw a job posting for a CYF attorney. The posting specified that a law degree and Pennsylvania license were mandatory, and that applicants were required to have two years of experience in social work or with the juvenile court. Id. at 21. Lucas completed a second application and hand-delivered it to the

County's human resources office. Id. at 17.

Shortly thereafter, he received a telephone call from a woman identifying herself as Wojcik's secretary, who asked if he remained interested in the CYF positions. Id. She explained that she was contacting the MH/MR interviewees because their original applications had been lost. Id. Lucas told her that he had already filed a second application. Id. at 17-18.

In August 2005, Lucas saw Latimer and learned that the CYF positions had been filled by women, Linda Fine and Audrey Quinn. Id. at 18. After this conversation, he went to the County human resources office where, to his surprise, he was told that he had not been considered for the CYF positions because he did not meet the minimum qualifications. Id. at 19. He was allowed to see a computer screen showing data profiling applicants for the relevant jobs. His profile reflected that he had been marked "qualified" for the MH/MR position, and "not qualified" for the CYF positions. The receptionist advised Lucas that he could file an appeal with Nicole Nagel ("Nagel"), who was then the employment coordinator for the County's department of human services. Id.

Lucas telephoned Nagel and Rennie Broderick("Broderick"), director of the human resources department. Each confirmed that Lucas had been deemed ineligible for the CYF position. Id. Lucas alleges that when he asked Broderick whether the veteran's preference had been applied in connection with any of the

positions, she replied that it was possible to "get around" the preference. Id. [1] Lucas then prepared appeal letters focusing on the applicability of the veteran's preference. Id. at 20. He did not receive a response.

This suit was filed in December 2005. In its Motion for Summary Judgment, the County asserts that there was no gender discrimination, and that the veteran's preference did not apply to the MH/MR job because Lucas was less qualified as the woman hired, and was not among the final candidates considered. The preference did not apply to the CYF jobs because Lucas failed to meet the minimum job requirements.

### B. THE LEGAL ISSUES

#### 1. ELEMENTS OF THE SECTION 1983 GENDER CLAIM

##### a. The Analytical Framework

Reverse discrimination cases in this Circuit are governed by Iadimarco v. Runyon, 190 F.3d 151 (3d Cir. 1999). There, the Court of Appeals adopted a modified burden shifting analysis generally tracking the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In order to establish a prima facie case of reverse discrimination in hiring, Lucas must

---

[1] Broderick recalls that her comment to Lucas was as follows: "Basically, I told him that, you know, if we could get around the veteran's preference issue it didn't really matter because he was not eligible. So he was not even on the list, so the veteran's preference wasn't applicable or relevant." (Doc. 34-4 Ex. 15 at 8).

show that: 1) he was a male; (2) who applied for and was qualified to perform the jobs for which he applied; (3) he was rejected; and (4) the County selected women to fill these positions. Medcalf v. Trustees of University of Pennsylvania, 71 Fed. Appx. 924, 927 (3d. Cir 2003). If he succeeds, the burden of production shifts to the Defendant, who must offer evidence of a legitimate nondiscriminatory reason for its failure to hire him. McDonnell Douglas Corp. 411 U.S. at 792. "If that showing is made, the burden, which is now more significant, shifts back to [Lucas]" Billet v. Cigna Corp., 940 F.2d 812, 816 (3d Cir. 1991) *abrogated in part on other grounds by* St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

In order to avoid summary judgment, Lucas must ultimately show either: 1) that the legitimate reason articulated by the County is not worthy of credence; or 2) the County's action was more likely to have been motivated by discrimination. Sullivan v. Standard Chlorine of Del. Inc., 845 F. Supp. 167, 175 (D. Del. 1995). Either of these routes to establishing pretext "places a difficult burden on [Lucas]." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). He must show such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the County's proffered . . . reason[ ] for [failing to hire him] that a reasonable fact finder could rationally [find] it 'unworthy of credence.'" Id. (internal citation omitted)(emphasis in original). "It is not enough that

he show that [the County's] decision was wrong or mistaken, since the factual dispute . . . is whether discriminatory animus motivated [the County], not whether the [its decision was] wise, shrewd, prudent, or competent." Id.

### b. The MH/MR Position - Lucas's Prima Facie Case

Only the second prong of Lucas's prima facie case is in dispute - whether he was qualified for the MH/MR position. The County contends that he was not.

"There is a low bar for establishing a prima facie case of employment discrimination." Scheidemantle v. Slippery Rock University, 470 F.3d 535, 539 (3d. Cir. 2006)(citing Ezold v. Wolf, 983 F.2d 509, 523 (3d. Cir 1993)(holding that subjective qualifications should be examined in second and third stages of the burden-shifting analysis to "avoid placing too onerous a burden on the plaintiff in establishing a prima facie case")). "The showing required for a prima facie case refers to minimal or absolute, rather than relative or comparative, qualifications." Flint v. Philadelphia, No. 98-95 2000 WL 288114 * 6 (E. D. Pa. 2000)(citing Patterson v. McClean Credit Union, 491 U.S. 164, 188 (1989)). *See also* Hugh v. Butler County Family YMCA, 418 F.3d 265, 268 (3d Cir. 2005)(noting that for purposes of prima facie discrimination claim, issue is whether objective job qualifications have been met).

Lucas indisputably satisfied the minimum requirements listed

for the MH/MR position. Moreover, the County's conduct with respect to Lucas precludes it from arguing otherwise.  Having 1) placed Lucas on a list of candidates certified as eligible; 2) reviewed his resume, and selected him for an interview; 3) interviewed him with the expectation that he could be hired if he made an extraordinary impression; 4) invited him to apply for other positions; and 5) reassured him weeks after the interview that he was still in contention for the job, the Defendant cannot reasonably contend that Lucas failed to establish that he was qualified for the MH/MR position. Lucas has established a prima facie claim of discrimination.

### c. The CYF Positions – Lucas's Prima Facie Case

As was the case with the MH/MR position, the Defendant contends that Lucas cannot establish a prima facie discrimination claim with respect to the CYF positions because he cannot show that he was qualified. This argument does not square with the County's conduct. The social work or juvenile court experience requirement was not announced or communicated to Lucas until well after the time Wojcik reviewed Lucas's original application and assured him that he would be considered for the CYF positions. Before the requirement was announced, Wojcik also told Latimer that Lucas was being considered, and the call from Wojcik's secretary to Lucas regarding the "lost" application indicated that Lucas was still in contention. In these circumstances, the

Defendant is in no position to argue that Lucas failed to meet the posted requirements for the CYF positions.

As to the both MH/MR and CYF positions, then, Lucas has successfully stated a prima facie case.

### d. The Proffered Legitimate Grounds for the Defendant's Failure to Hire Lucas

The Defendant contends that Lucas was not the best qualified, or even one of the top three candidates for the MH/MR opening. "With respect to the MH/MR position, the successful candidate had experience in the field of social services and she also had the experience in bankruptcy and immigration law which the Solicitor valued." (Doc. 26 at 5). With respect to the CYF positions, the County maintains that Lucas failed to meet the minimum job requirements, or, in the alternative, that the candidates hired for the CYF positions had qualifications superior to Lucas's in that they "had experience in family or juvenile court." Id.

The court, as it explained in detail above, rejects the County's position that Lucas failed to meet the minimum qualifications for any of the jobs. The County's alleged reliance on the applicants' *comparative* credentials is, however, a different matter, and is sufficient to meet the Defendant's minimal burden to articulate a legitimate nondiscriminatory basis for its hiring decisions. The court thus turns its attention to

Lucas's allegations of pretext.

### e. Lucas's Evidence of Pretext

"In order to prove [the County's] explanation is pretextual,[Lucas] must cast[ ] sufficient doubt upon . . . the legitimate reason[ ] proffered . . . so that a factfinder could reasonably conclude that [the] reason was a fabrication . . . or . . .[so that the] factfinder [could] infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Wishkin v. Potter, ___F.3d____(3d Cir. 2007), No. 05-0743, 2007 WL 405875 * 4 (Feb. 7, 2007)(internal quotation omitted).[2]

Lucas argues that the County's explanation for its failure to hire him is false. In order to create "sufficient doubt as to the proffered rationale - [Lucas] must present evidence that suggests [the County's] decision 'was so plainly wrong that it cannot have been the employer's real reason.'" Dunleavy v. Mt. Olive Twnshp., No. 04-122, 2005 WL 1828560 *4 (D. N.J. July 29,2005)(quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997)). "This rigorous standard applies because "federal courts are not arbitral boards ruling on the strength of [the employment decision]. The question is not whether the employer made the best, or even a sound, business

---

[2]Lucas testified that he does not have knowledge or information - other than the fact that three women were hired - to support his claim that he was a victim of gender discrimination. (Doc. 34-2 Ex. 1 at 21).

decision; it is whether the real reason is [gender discrimination]." Id.

### (1) The County's Assessment of Latimer's Legal Experience

Lucas argues that a jury could reject the County's assertion that Latimer had superior qualifications because she had experience in bankruptcy and immigration law, while Lucas did not.[3] He argues that because the job posting for the MH/MR position did not state that experience in these areas was required, a reasonable jury could conclude that the County's assertion that it hired Latimer based on her experience was pretextual. (Doc. 31 at 12). According to Lucas, Latimer was selected based on gender, and the value of her experience was manufactured after litigation ensued; the County's alleged reliance on Latimer's experience was a post hoc justification for a discriminatory decision.

The underpinnings for this argument are seriously flawed. Lucas conflates the minimum qualifications required to establish a prima facie claim with the entirely distinct concept of candidates' competing qualifications for a particular position. Both Latimer and Lucas satisfied the minimum requirements and *in this limited sense* they were equally qualified for the MH/MR

---

[3]This argument ignores altogether the fact that Latimer also had experience with family law, representing parents or children in dependency proceedings and conducting case follow-up for the Department of Human Services and other service providers.

position. This does not mean, as Lucas contends, that he and Latimer were equally well suited for the position, or that the Defendant was prohibited from considering factors not specified in the job posting in making a judgment as to which candidate best suited its needs.

Not surprisingly, Lucas does not cite authority for the proposition that a potential employer must look only to the requirements set out in a job posting in assessing the relative merits of competing candidates, or, conversely, that it must detail in that posting every last factor that could contribute to its ultimate decision. This proposition defies sound business practice and common sense, ignoring the practical reality that meeting an employer's minimum requirements offers no assurance of securing employment.

The laws prohibiting discrimination do not ban the use of subjective decisionmaking." Millbrook v. IBP,Inc., 280 F.3d 1169, 1176 (7th Cir. 2002). "In fact, 'subjective evaluations of a job candidate are often critical to the decisionmaking process, and if anything, are becoming more so in our increasingly service oriented economy.'" Id. (quoting Denney v. City of Albany, 247 F.3d 1172, 1185-86 (11th Cir. 2001)).

An employer's reliance on hiring criteria "clearly related to the position in question do not raise suspicions of pretext unless the plaintiff shows that the criteria are illegitimate or that they are irrelevant to the position." Bishop v. Aerus, LLC.,

No 1:02CV00208, 2003 WL 22862650 *11, (W.D. Va. Dec. 3, 2003). The court finds nothing in the record to cast suspicion on Wojcik's preference for a candidate who had a breadth of legal experience, especially where he fully explained the budgetary constraints making an attorney with competence in multiple areas especially attractive.

Lucas cites <u>Waldron v. SL Industries, Inc.</u>, 56 F.3d 491 (3d Cir. 1995), for the proposition that Latimer's experience in bankruptcy and immigration could not have been real factors favoring her hire because she has only handled a few immigration matters, and has not done any bankruptcy work. <u>Waldron</u> is inapposite. Bankruptcy and immigration law are specialized areas of practice that one would not expect to arise often in the day to day practice of the Law Department. Yet, Wojcik testified that there is, on occasion, a need for expertise in these areas, and that family-related immigration issues arise more often now that they did in the past. That Latimer has not handled a significant volume of cases in either area does not negate the value of her experience. There is no reason to doubt that the County could reasonably view a candidate with this broader relevant experience more favorably than a candidate with a more limited background.

"It is not a function of this court to second-guess managerial decisions concerning the relative qualifications of competing applicants and subjectively weigh factors it considers important." <u>Dunleavy</u>, 2005 WL 1828560 * 6. For Lucas to use the

County's hiring criteria to create an inference of pretext, he must "point to evidence from which a factfinder could reasonably infer that . . . the criterion identified by the employer was illegitimate or that the employer did not actually rely on [these] criteria in choosing [Latimer] for the position.[4] Simpson v. Kay Jewelers, Division of Sterling, Inc., 142 F.3d 639, 647 (3d. Cir. 1998). He has done neither. As to the MH/MR portion of Lucas's discrimination claim, then, the County's motion for summary judgment should be granted.

### (2) The Failure to Hire Lucas for the CYF Positions

The course of the County's interaction with Lucas during the CYF hiring process is more troubling. The County steadfastly contends that Lucas did not have the minimum qualifications for the job - two years of experience in social work or the juvenile court system and a preference for a litigation background. These requirements were not articulated until well after Lucas was told that he would be considered for the job. Moreover, the County insists that the lack of these qualifications was fatal to Lucas's application even though Audrey Quinn, one of the

---

[4] Lucas contends that his allegation of pretext is supported by Latimer's instructions to avoid telling him that she had been hired for the MH/MR position, Wojcik's deposition testimony that Lucas lacked - and admitted that he lacked - litigation experience although his resume indicated otherwise, and the difference in testimony given by Wojcik and Whiteman regarding Lucas's reason for seeking the open positions. The court does not believe that these items of evidence, considered alone or as part of the whole, are sufficient to satisfy the rigorous standard articulated in Perskie, 32 F.3d at 765.

applicants hired to fill the CYF positions, also failed to meet the requirements and had less litigation experience than Lucas.

The way that these qualifications were generated and applied to exclude Lucas is also problematic. Lucas's first application, the one upon which the County relied in telling him that he was in contention for the CYF jobs, made clear that Lucas did not have two years of experience in social work or with the juvenile court. His application materials also demonstrate that Lucas did have a body of litigation experience - a fact that the County denies or downplays.

At some point in the consideration process, the County told Lucas that his original application had been lost, and that he should submit a second one. When this second application was reviewed by the human resources department, Lucas was disqualified and his name was withheld from the list of eligible candidates. On the record as it stands, the court cannot determine how many of the original interviewees were required to or did submit second applications, or whether any of these candidates also suffered disqualification. It can say, however, that Lucas's original application was not lost, as it was produced in discovery, and that Lucas was not notified that he had been disqualified until he asked to see his own records, after the jobs had been filled.

Given the anomalies in the hiring process for the CYF positions, the court finds that Lucas has adduced evidence

sufficient to convince a reasonable factfinder that the justification given by the County for its failure to hire him is not worthy of credence. Accordingly, summary judgment with respect to this portion of Lucas's claim should be denied.

### 3. **THE COUNTY'S FAILURE TO APPLY THE VETERANS PREFERENCE**

Pennsylvania'S Veteran's Preference Act, 51 Pa. C. S. § 7104(a) ("The Act") states:

> (a) Non-civil service. Whenever any soldier possesses the requisite qualifications and is eligible for appointment to or to promotion in a public position, where no such civil service exam is required, the appointing power in making an appointment or promotion to a public position shall give preference to such soldier.

"Under controlling Pennsylvania law, a veteran 'must be given "preference"' under §7104(a) only if he possesses the necessary qualifications for a position as determined by the hiring body.'" Basile v. Elizabethtown Area Sch. Dist., 61 F. Supp. 2d 392, 400(E.D. Pa. 1999)(quoting Brickhouse v. Spring-Ford Area Sch. Dist., 540 Pa. 176, 180 (1995)). "Veterans are not to be preferred in the assignment of public jobs merely on the strength of being veterans." Dickey v. Bd. of Commissioners of the City of Washington, 658 A. 2d 876, 878 (1995). Instead, a job candidate must establish that he meets the employer's minimum requirements, and also must be able to "demonstrate his ability to perform the job at the level of skill and with the expertise demanded by the employer." Id. A public employer is able to establish its own

hiring criteria without running afoul of the Veteran's Preference Act so long as it does not formulate or apply these criteria with the intent to defeat the preference. See <u>Foxworth v. Pennsylvania State Police</u>, 402 F. Supp. 2d 523 (E.D. Pa. 2005).

Lucas does not dispute that the County was free to establish its own selection criteria. He contends instead that the criteria were formulated and applied in bad faith in order to avoid having to grant a veteran's preference.[5] The court has carefully reviewed the record against the background of these allegations, and does not find any hint that the hiring of Crystal Latimer was infected by a bad faith attempt to avoid the veteran's preference. The court is convinced, however, that Lucas has adduced enough evidence - the same evidence that is detailed thoroughly in the discussion of his discrimination claim - of irregularity in the processing of his CYF applications to survive summary judgment.

### III. <u>CONCLUSION</u>

For the reasons set out above, it is recommended that Summary Judgement be granted in favor of the Defendant with respect to the Count I claim alleging gender discrimination in County's failure to Hire Lucas for the MH/MR position. As to the

---

[5] Lucas does not argue that alleged violations of the Veteran's Preference Act implicate a constitutional concern; these claims are grounded exclusively in state law.

discrimination claim based on the County's failure to hire Lucas for either of the CYF positions, the Motion should be denied.

The court's recommended disposition of the Count II Veteran's Preference Act claims is similar. As to the claim alleging bad faith denial of the preference in the context of the MH/MR position, the Defendant's Motion for Summary Judgment should be granted. As to the remaining preference claim based on the County's failure to hire Lucas for open CYF positions, the Motion should be denied.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b)(1) (B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by March 12, 2007. Any response to objections is due by March 22, 2007.


February 20, 2007


S/ Francis X. Caiazza
Francis X. Caiazza
U.S. Magistrate Judge

cc:

cc: Counsel of Record
    Via Electronic Mail